In re WONG FOCK.

(District Court, N. D. California. May 10, 1897.)

No. 11,333.

1. UNITED STATES COMMISSIONERS—JURISDICTION UNDER CHINESE EXCLUSION ACT.
   A United States commissioner is "a United States judge," within the meaning of section 6 of the Chinese exclusion act of May 5, 1892, which provides that a Chinese laborer within the limits of the United States who shall neglect to comply with its provisions may be arrested and taken before "a United States judge," whose duty it shall be to order that he be deported, as that section is to be read in connection with section 3 of the same act, which provides that a Chinese person may be adjudged to be unlawfully within the United States "by a justice, judge, or commissioner."

2. SAME—VALIDITY OF ORDER OF DEPORTATION.
   A commissioner having made an order of deportation under that statute, his further order that the person to be deported "be forthwith taken before the nearest United States judge, that a review of these proceedings may be had and proper order of deportation made," being unnecessary, may be treated as surplusage.

E. S. Solomon, for petitioner.
H. S. Foote, U. S. Dist. Atty.

MORROW, District Judge. A petition for a writ of habeas corpus was filed in this court by Wong Sing on behalf of Wong Fock, the detained, in which it is alleged that Wong Fock is unlawfully imprisoned, detained, confined, and restrained of his liberty by L. Ezekiel, a deputy United States marshal of the territory of Arizona, in the county jail of the city and county of San Francisco, state and Northern district of California; that the illegality of the imprisonment consists in the fact that said deputy United States marshal holds and keeps said Wong Fock in confinement for the purpose of deporting him to China, for an alleged violation by said Wong Fock of an act of congress of May 5, 1892, in not procuring the certificate of residence required by said act. It is further alleged in said

petition that said deputy United States marshal has no authority to confine and imprison, nor deport, said Wong Fock, for the reason that the latter was never brought before any judge of any district of the United States; that the accusation that said Wong Fock was without a certificate of residence was never heard by a judge of the United States, and that no order of deportation to China, directing and ordering the deportation of said Wong Fock, was ever issued by any judge of any United States district court, or of any court whatever, as required by said act of congress. The return of the deputy United States marshal of the territory of Arizona, upon whom the writ was served, shows that he holds the detained, Wong Fock, in his custody for the purpose of deporting him to China, under and by virtue of an "order of deportation" made and issued by J. H. Carpenter, United States commissioner of the Third judicial district of the territory of Arizona, at Yuma, which order was approved by Hon. A. C. Baker, the United States judge for that judicial district. The order of deportation recites that a verified complaint was made before the United States commissioner for the Third judicial district of the territory of Arizona, at Yuma, charging Wong Fock with having violated section 6 of an act of congress approved May 5, 1892, entitled "An act to prohibit the coming of Chinese persons into the United States," as amended by the act of November 3, 1893, in failing to register and obtain a certificate of residence as required by said acts; that a warrant was issued by such commissioner; that Wong Fock was duly apprehended upon said warrant and brought before the commissioner on April 21, 1897; that a hearing was had upon the charge made by said complaint; that testimony was taken and proceedings had before such commissioner; and that said commissioner on April 21, 1897, found, from the testimony and proceedings had before him, that Wong Fock was, by race, color, dress, and appearance, a Chinese person; that he was a laborer by occupation; that he was a resident of the territory of Arizona at the time of the passage of the act of congress of May 5, 1892, and had since continued such residence; that he was after November 3, 1893, found to be a resident within the jurisdiction of the United States, and of the Third judicial district of the territory of Arizona, without the certificate of residence provided for in the act of congress referred to; that he had neglected, failed, and refused to comply with the provisions of said act; that he had not established to the satisfaction of said commissioner that by reason of accident, sickness, or unavoidable cause, he was unable to procure such certificate of residence; and that said Wong Fock was unlawfully within the United States. Following these findings, the commissioner ordered that Wong Fock be removed from the United States to China; that the deportation of said Wong Fock be made from the port of San Francisco, within the limits of the Northern district of California, and that he be committed to the custody of the United States marshal for the territory of Arizona to carry out the order of deportation; and it was further ordered that Wong Fock be forthwith taken before the nearest United States judge, that

a review of the proceedings might be had, and a proper order of deportation made. The only record showing that this last order was carried out is the indorsement upon the "order of deportation" itself of the following: "Approved. A. C. Baker, Judge."

Upon the return of the writ in this court, the matter was referred to E. H. Heacock, Esq., the special referee and examiner, to ascertain the facts and report his opinion thereon. It was contended before him that the commissioner of the Third judicial district of the territory of Arizona, who made and issued the order of deportation, had no jurisdiction to hear and determine the alleged violation of the acts of congress referred to, for the reason that it is provided by section 6 of the act of May 5, 1892 (27 Stat. 25), that Chinese laborers, within the limits of the United States, who shall neglect to comply with its provisions, may be arrested, etc., "and taken before a United States judge whose duty it shall be to order that he be deported," etc. It is contended by counsel for the petitioner that it necessarily follows that the judicial power so conferred by this section upon "a United States judge" is exclusive, and can be exercised by him alone, and that a United States commissioner is not "a United States judge." The special referee held that this contention was untenable, inasmuch as section 3 of the same act provides that a Chinese person may "be adjudged to be unlawfully within the United States * * * by a justice, judge, or commissioner," and that the expression, "a United States judge," found in section 6, must be read in connection with section 3. He held, therefore, that the commissioner had full jurisdiction and power to hear and determine the question whether or not Wong Fock was lawfully within the United States. He recommended that the writ be dismissed, and the detained remanded to the custody of the United States marshal of the territory of Arizona, to be by him deported to China in pursuance of said order of deportation. To this recommendation, exceptions have been taken by counsel for the petitioner.

It is unnecessary to consider at length the question involved. The whole matter was critically discussed and considered by the special referee in his opinion and findings filed May 3, 1897. I agree with him that section 3 of the act is to be read in connection with section 6. Section 2 of the same act is also consistent with and fortifies the interpretation to be given to the expression "a United States judge." That congress intended that United States commissioners should have the power to determine whether Chinese persons were lawfully within the United States, and to make the appropriate order of deportation, if they were found to be within the United States in violation of section 6 of the act, is, I think, patent from a reading of the act of May 5, 1892, as amended by the act of November 3, 1893, in its entirety, and also from previous acts upon the subject. See section 13 of the act of September 13, 1888 (25 Stat. 476); section 12 of the act of May 6, 1882, as amended by the act of July 5, 1884 (23 Stat. 117). The expression "a United States judge," found in section 6 of the act of May 5, 1892, is, in my opinion, a general one, and refers to those judicial officers

(viz. "justice, judge, **or** commissioner") previously and specifically enumerated in sections 2 and 3 of the same act. A United States commissioner is certainly a judicial officer, and exercises—it is true, within very narrow limits—the functions of a United States judge. In the case of Fong Yue Ting v. U. S., 149 U. S. 698, 728, 13 Sup. Ct. 1016, 1028, the supreme court, in considering the meaning of the identical expression in section 6 involved in the case at bar, said:

"The designation of the judge, in general terms, as 'a United States judge,' is an apt and sufficient description of a judge of a court of the United States, and is equivalent to or synonymous with the designation in other statutes of the judges authorized to issue writs of habeas corpus, or warrants to arrest persons accused of crime;" citing sections 752 and 1014 of the Revised Statutes.

Section 1014 provides that:

"For any crime or offense against the United States, the offender may, by any justice or judge of the United States, or by any commissioner of a circuit court, * * * be arrested and imprisoned," etc.

While in the case above referred to the supreme court were considering the term "a United States judge" as applied to a district judge, still it would seem that the definition they then gave to the expression "a United States judge," in the sense in which it is used in the acts referred to, is broad enough to include United States commissioners, for they have the power to issue "warrants to arrest persons accused of crime." I come to the conclusion that United States commissioners not only have the power to adjudge whether a Chinese person is unlawfully in the United States, under sections 2 and 3 of the act, but that they have also the power to order a deportation, under section 6. I make this deduction, not alone by reason of the construction to which the several sections of the act in question seem to be reasonably susceptible, but because it would result, if judges of the district or circuit court only could take cognizance of this class of cases, that in many cases it would become almost impracticable to enforce the law, and certainly very expensive to do so, on account, as is very persuasively observed by the special referee in his opinion, of our extended territory, the limited number of our United States judges, and the great distance frequently intervening between the place of arrest and the place of trial. One of the strongest reasons for the appointment of United States commissioners in certain localities is because distance, or the difficulty of travel, render the court and the judge thereof difficult of access. It seems to me that congress must have had this in mind when it provided in sections 2 and 3 that United States commissioners, among other judicial officers, should adjudge whether persons of Chinese descent, arrested under the provisions of the act or the acts thereby extended, were or were not lawfully within the United States. In statutory construction, arguments of convenience often address themselves strongly to the court. As was aptly said by Mr. Chief Justice Marshall in U. S. v. Fisher, 2 Cranch, 386, "Where great inconvenience will result from a particular construction, that construction is to be avoided, unless the meaning of the legislature is plain, in which case it must be obeyed." In the case of U. S. v. Wong Dep Ken, 57 Fed. 203, it appeared that a Chinese person had been adjudged by a United States commission-

er to be unlawfully in the United States, and the commissioner had made n order directing the Chinese person to be imprisoned at hard labor n the state prison at San Quentin, and thereafter to be deported to China. The case came up before Judge Ross upon the question whether Wong Dep Ken had the right to appeal to a district court under section 13 of the act of September 13, 1888 (25 Stat. 476), and it was held by the learned judge that he had. While, it is true, the question involved in the case at bar did not arise, still the effect of the decision necessarily is to recognize the power of a United States commissioner to make an order of deportation; otherwise no right of appeal could lie from his order of deportation. I agree with the special referee that the order of the commissioner that "said Wong Fock be forthwith taken before the nearest United States judge, that a review of these proceedings may be had, and proper order of deportation made," and the approval thereof indorsed by the judge for that judicial district on the order of deportation, were all unnecessary and immaterial, and may be treated as mere surplusage, if the view taken by the court of the power and jurisdiction of the commissioner to make and issue an order for deportation for a violation of section 6 of the act in question is sound. The report and recommendation of the special referee and examiner will therefore be confirmed, the writ of habeas corpus will be dismissed, and the detained, Wong Fock, remanded to the custody of the Deputy United States marshal of the territory of Arizona, to be by him deported to China; and it is so ordered.